CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 11, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ISAAC MONTOYA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:24cv0544 |
| v. | ) | |
| | ) | |
| LARRY COLLINS, et al., | ) | |
| | ) | By: Hon. Robert S. Ballou |
| Defendants. | ) | United States District Judge |

### MEMORANDUM OPINION

Isaac Montoya, a New Mexico inmate currently incarcerated in the Virginia Department of Corrections ("VDOC"), proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights by failing to provide him with adequate medical care for scabies and failing to keep the prison in sanitary condition, contributing to his contracting scabies. Defendants Larry Collins, A. Duncan, and J. Fleming ("the non-medical defendants") have filed a Motion for Summary Judgment asserting that Montoya has failed to exhaust his administrative remedies. Dkt. 36. Defendants Nurse Trent, Dr. Fox, Dr. McDuffie, and NP Holbrook ("the medical defendants") have filed a separate Motion to Dismiss and Motion for Summary Judgment, asserting that they have not been deliberately indifferent to Montoya's medical needs and that Montoya has failed to state a claim on which relief can be granted.  Dkt. 28. Montoya has responded to both motions. Because I find that genuine issues of material fact remain as to whether Montoya exhausted his administrative remedies, the non-medical defendants' Motion for Summary Judgment is **DENIED**. However, as I find no genuine dispute of material fact that the medical defendants have not been deliberately indifferent to Montoya's medical needs, the medical defendants' motion for summary judgment

is **GRANTED** and Montoya's claims against the medical defendants are dismissed with prejudice.

I. **Summary Judgment Standard**

The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Id.* at 255. However, when a motion for summary judgment is properly supported by affidavits, the nonmoving party may not rest on the mere allegations or denials in his pleadings. *Anderson*, 477 U.S. at 256. Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. *Id.* at 256-57.

II. **The Non-medical Defendants' Motion for Summary Judgment**

The non-medical defendants' motion relies on the affidavit of T. Still, the grievance coordinator for Red Onion State Prison, and enclosures, including a copy of Operating Procedure 866.1 (the Offender Grievance Procedure) and Montoya's various informal complaints, regular grievances, and appeals. Dkt. 37.[1] T. Still determined that Montoya did not exhaust his administrative remedies because he "never submitted a regular grievance that was accepted at intake and appealed through" the highest level. Dkt. 37 at 12. Montoya alleges in his Complaint

---

[1] These defendants did not initially include an affidavit from T. Still, nor related enclosures, with their motion for summary judgment (Dkt. 36); however, these documents were later filed and deemed timely by the court (Dkt. 56, 57).

2

that he exhausted available administrative remedies to the best of his ability, claiming that most of the complaints he filed were "not responded to or logged." Dkt. 1.

### A. Background

In his Affidavit, T. Still discusses his review of Montoya's grievance file and determines that Montoya has failed to exhaust his administrative remedies "by pursuing a regular grievance through the required levels of appeal." Dkt. 56 ¶ 15. The non-medical defendants also claim that if a regular grievance does "not meet the filing requirements" it is returned to the inmate within two working days from the date of receipt, noting the reason for return, and the inmate "is instructed how to remedy any problems with the regular grievance when feasible." *Id.* ¶ 10. While the inmate may ask the Regional Ombudsman to review the intake decision, appealing the intake decision does not satisfy the exhaustion requirement. Dkt. 37 at 5. T. Still acknowledges that Montoya complained about "decontamination of cells" in his regular grievance, filed on April 30, 2023 (Log. No. ROSP-23-REG-00168), which he appealed. *Id.* ¶ 22. However, T. Still explains that this issue is not exhausted because:

> Only one issue per grievance is allowed. All responses to Montoya's regular grievance addressed his medical complaint and treatment for possible scabies. The decontamination issue was not addressed since only one issue per grievance is allowed per policy.

*Id.* However, the documents submitted by T. Still to support this argument show that the decontamination issue was addressed, both at the Level I and Level II responses. The Level I Response, finding the grievance unfounded, summarizes Montoya's grievance as including being placed in a cell that "was never decontaminated" and references Operating Procedure 501.6 Sanitation and Safety. Dkt. 56 at 51. Likewise, a review of the Health Services Director's response to Montoya's Level II appeal characterizes Montoya's grievance as including the failure to decontaminate his cell, indicating:

3


> Your grievance appeal complaint has been reviewed along with the response from Level I grievance and your complaint on 4/2/3 that you received Permethrin treatment for scabies; however, you continue to have "these dirty tramps" and you were placed back in the same cell without it being decontaminated.

Dkt. 56 at 49. The Level II response indicates that "all administrative remedies have been exhausted regarding this issue." *Id.*

T. Still also references three separate written complaints that Montoya filed complaining about the cleanliness of his cell or the facility, which Montoya then filed a regular grievance about, all which T. Still rejected at intake:

(1) Written complaint filed on March 21, 2024 (Log No. ROSP-24-WRI-01848) complaining that the recreation cages are covered in bird and human feces, which can lead to disease. When Montoya attempted to file a regular grievance[2] on this issue, complaining about the bird feces in the recreation cages, and writing that the cleanliness issue "has contributed to me having scabies" T. Still denied it at intake because "Montoya did not indicate how he was personally affected." This intake decision was upheld on appeal. *Id.* at 24.

(2) Written complaint filed on April 2, 2024 (Log No. ROSP-24-WRI-02060),[3] complaining that he was moved to a cell where dried feces were leaking from the air vent. The Response dated April 15, 2024, indicates that "All cells are inspected along with a document provided that Staff has searched the cell and no documentation states that there was feces or any biohazardous waste in your cell prior to you being housed there." Dkt. 56 at 61. However, when Montoya attempted to file a regular grievance on this issue, T. Still denied it at intake, on May 2, 2024, because "Montoya did not indicate how he was personally affected." This intake decision was upheld on appeal, despite Montoya's explanation that the unsanitary condition of his cell have personally affected him by causing him to contract diseases including hepatitis, e-coli, and scabies. Dkt. 56 at 64.

(3) Written complaint filed on April 3, 2024 (Log No. ROSP-24-WRI-02061) complaining that his cell had feces on the vent an overflowing toilet, and that the toilet was "shooting out sewage and urine on the floor." The response, dated April 12,

---

[2] The regular grievance was submitted as an attachment to T. Still's Affidavit. Dkt. 56 at 57. Montoya's appeal of the intake decision states it is "obvious" in the grievance how he has been personally affected, as he states the lack of cleanliness puts him at risk for catching infectious diseases. Dkt. 56, at 60.

[3] The regular grievance was submitted as an attachment to T. Still's Affidavit. Dkt. 56 at 61.

2024, indicates "all cells are cleaned and inspected before inmates are housed in the cell." Dkt. 56 at 66. When Montoya attempted to file a regular grievance on this issue, T. Still denied it at intake, deeming it a "request for services." *Id.* ¶ 26.

Montoya has alleged in his Complaint that the administrative process was unavailable to him, but that he exhausted it to the best of his ability. He has also submitted various exhibits as "additional evidence" supporting his case. Dkt. 58-61. Montoya, both based on the documents attached to his Complaint[4] and the non-medical defendants' motion for summary judgment, filed several written complaints and regular grievances about sanitation issues at the prison. With the exception of the April 30, 2023 regular grievance (Log. No. ROSP-23-REG-00168), which he appealed to Level II, it appears all were rejected at intake.

**B. Law & Analysis**

The PLRA requires inmates to exhaust available administrative remedies prior to bringing lawsuits. 42 U.S.C. § 1997e(a). This demands "proper exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). However, prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes "unavailable" if "a prisoner, through no fault of his own, was prevented from availing himself of it." *See Moore v. Bennett,* 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court in *Ross* recognized three instances where an administrative remedy is considered "unavailable;" (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use;" (3) "when prison administrators' thwart inmates from taking advantage of a grievance process

---

[4] Dkt. 1-1, Ex. 2(c) and 2(e) (pages 22-25 and 28-30).

5

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). The Fourth Circuit has held that "a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it." *Moss v. Harwood*, 19 F.4th 614, 623 (4th Cir. 2021). Failure to exhaust is an affirmative defense for which the defendants bear the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

      The non-medical defendants attempt to characterize Montoya's regular grievance, filed on April 30, 2023 (Log. No. ROSP-23-REG-00168), which he appealed to the highest level, as not including the decontamination issue. However, the prison's own responses clearly show the decontamination issue was addressed. Montoya informed the defendants of his complaints regarding the unsanitary nature of the prison, in compliance with the prison's own grievance system. "[T]o satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[ ] the prison to the nature of the wrong for which redress is sought.' " *Wilcox v. Brown*, 877 F.3d 161, 170, n.4 (4th Cir. 2017) (citing *Strong v. Davis*, 297 F.3d 646, 650 (7th Cir. 2002)). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* Nothing in the prison's responses to Montoya's regular grievance indicates prison officials deemed the decontamination issue a separate issue from the medical complaints and thus did not address the decontamination issue. Instead, the Grievance Level II response specifically references Montoya's complaint that his cell was not decontaminated, finds the grievance unfounded, and states he has exhausted his administrative remedies. Dkt. 56 at 49. Further, according to T. Still's Affidavit, reasons for returning a regular grievance to the inmate at intake include "more than one issue per grievance," which apparently did not occur here. Dkt. 56 at 3.

6

It is defendants' burden to show a failure to exhaust, and they have not met it. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because I find that Montoya did exhaust his grievance regarding the defendants' failure to keep the prison in a sanitary condition, I need not address Montoya's claim that the administrative process was unavailable to him. Still, I note that Montoya's informal grievances regarding the unsanitary nature of his cell and the prison, the precise issue that defendants claim he did not exhaust, were repeatedly rejected at intake by T. Still. Even though Montoya appealed these intake decisions, an appeal of a rejection at intake does not constitute exhaustion. *Jackson v. Barksdale*, No. 7:17-cv-00031, 2017 WL 3446259, at *3 (W.D. Va. Aug. 10, 2017), *aff'd*, 707 F. App'x 786 (4th Cir. 2018) (explaining that "final intake decisions do not constitute exhaustion of administrative remedies"). I also recognize that an inmate's disagreement with an intake decision is "not [alone] enough to overcome the exhaustion requirement." *Muhammad v. Fleming*, No. 7:17-cv-00481, 2024 WL 4270014, at *6 (W.D. Va. Sept. 23, 2024). However, this goes beyond mere disagreement; Montoya filed written complaints and regular grievances regarding unsanitary conditions on multiple occasions but still was prevented from administrative exhaustion due to repeated rejections at intake. This begs the question, what "magic words" would Montoya have needed to use to have this issue of unsanitary prison conditions– including that feces were leaking from his air vent, and his toilet was overflowing with feces onto his floor–accepted into the grievance process, permitting exhaustion?

An administrative remedy is considered unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. Here, Montoya filed three regular grievances regarding unsanitary conditions at the prison and in his cell and T. Still rejected two for failing to indicate how he was personally affected, and the third as a request for

7

services. The Regional Ombudsman upheld all three on appeal, despite Montoya explaining that the unsanitary conditions affected him personally by causing illness. It's simply not rational to repeatedly reject Montoya's regular grievances, where he specifically identifies unsanitary conditions in recreation areas that he frequents and in his own cell, complaining they are making him sick, and asking for money damages, among other remedies, for not indicating how he was affected personally or as a request for services. "If the grievance department rejects a grievance for plainly incorrect (and indeed irrational) reasons, the administrative process was not available to the inmate 'through no fault of his own.' " *Allen v. Shelton*, No. 7:22-cv-00408, 2023 WL 6389807, at *12 (W.D. Va. Sept. 29, 2023) ("VDOC cannot blithely reject a grievance at intake and then point to that facile decision to argue 'the inmate did not exhaust'") (citation omitted); *Tory v. Davis*, No. 21-6649, 2022 WL 17716775, at *2 (4th Cir. Dec. 15, 2022) (noting that "if [defendant correctional officers] incorrectly rejected intake of [the inmate's] grievances, administrative remedies may have been unavailable"); *see also Allen v. Shelton*, No. 7:22-cv-00408, 2023 WL 6389807, at *12 (W.D. Va. Sept. 29, 2023)

Viewing the record in the light most favorable to Montoya, as is appropriate on summary judgment, sufficient evidence exists to create a genuine issue of material fact both as to whether Montoya submitted a regular grievance complaining about unsanitary conditions, which was appealed to the highest level and exhausted, and whether Montoya submitted multiple regular grievances on this same issue, which were improperly rejected at intake, rendering administrative remedies unavailable to him. *See, e.g., Tory v. Davis*, No. 21-6649, 2022 WL 17716775, at *2 (4th Cir. Dec. 15, 2022). Either way, summary judgment is not appropriate for the non-medical defendants and is denied.

**III.     The Medical Defendants' Motion for Summary Judgment**

In support of their Motion for Summary Judgment, arguing that they were not deliberately indifferent to Montoya's serious medical needs, the medical defendants rely on the Affidavits of Leah Holbrook, a Nurse Practitioner at Red Onion State Prison, and Dr. McDuffie, a psychiatrist who provides services at the prison. The medical defendants do not argue that Montoya failed to exhaust his administrative remedies. Montoya's Complaint was signed, sworn, and submitted under penalty of perjury and thus constitutes a verified complaint that is "equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

### A. Background

Montoya has been housed at Red Onion State Prison, a VDOC facility, since August 2022. Holbrook Aff. ¶ 12, Dkt. 30-1. Montoya asserts that he began to feel "some type of parasite or bug crawling" on his skin on November 4, 2022. Compl. ¶ 11, Dkt. 1. He informed defendant NP Holbrook that he "had to have scabies" because of his symptoms, and because of the unsanitary condition of the facility. *Id.* at ¶ 12. However, instead of scheduling Montoya to see a dermatologist, NP Holbrook provided him with promethazine cream, which he claims was not the proper treatment. *Id.* at ¶ 13.

On April 3, 2023, Montoya indicates that "medical" told correctional officers to "throw all [his] property and linen in red Biohazard bags," and that subsequently defendant Dr. McDuffie lowered his mental health medication because NP Holbrook indicated "[Montoya's] psych meds were causing him to feel bugs." *Id.* at ¶ 15-16. Despite additional complaints by Montoya regarding symptoms he attributes to scabies, he was not taken to see a dermatologist until May 20, 2024. *Id.* ¶ 18. Montoya alleges that the dermatologist determined he had scabies,

9

ordered treatment, and when he returned to the jail, he again had to throw all his property in red Biohazard bags and "fully disinfect his cell," and "was isolated" for a couple of days. *Id.* ¶¶ 19-20. Montoya brings a claim for deliberate indifference to a serious medical need under the Eighth Amendment as well as several state law claims.

Defendant NP Holbrook is a licensed nurse practitioner who has been trained in diagnosing common skin complaints, including scabies. She states that she knows the "signs and symptoms" of scabies and that Montoya never displayed symptoms consistent with scabies. Aff. Holbrook ¶ 22, Dkt. 30-1. NP Holbrook first saw Montoya related to his complaints of itching on February 8, 2023, where she observed skin lesions consistent with picking at the skin, she prescribed an antibiotic ointment and advised him to stop picking at the skin. *Id.* ¶ *23.* NP Holbrook explains that, although Montoya complained during the visit of "mites that looked like sea horses" and that he could "pull the mites out of his sores," his symptoms were not consistent with scabies, including because there were no burrows, the lesions were random, and were not located on his lower back, abdomen, or legs. *Id.* ¶ 24.

Defendant Dr. Fox saw Montoya the following week, on February 17, 2023, for continued complaints of scabies, and also determined his symptoms were not consistent with scabies. *Id.* ¶ 26. At this appointment Montoya reported "worm like bugs" living under his skin that could "float into the air", which are not consistent with scabies, but did raise psychiatric concerns. *Id.* NP Holbrook treated Montoya again for similar complaints the following month, on March 28, 2023. *Id.* ¶ 27. While she observed scars on his face and scalp, she found no symptoms consistent with scabies. *Id.* However, because of Montoya's persistent belief that he had scabies, NP Holbrook and Dr. Fox decided to treat Montoya for scabies solely to ease his mind, as scabies treatment carries minimal risk. *Id.* ¶ 28. Thus, Montoya was admitted to the

10

medical department from March 31-April 2, 2023 for scabies treatment involving applying Permethrin cream over his body. *Id.* ¶ 29. Montoya saw Dr. Fox again on May 19, 2023 complaining of bugs, and the record indicates a "persistent delusion of floating bugs in the air" but no signs of scabies. *Id.* ¶ 31. In August, September, and November 2023, Montoya saw Dr. Happy Smith, who noted no symptoms of scabies, but provided various treatments, including a special shampoo for dry scalp and Permethrin. *Id.* ¶¶ 32-34.

On May 20, 2024, Montoya was transported to an off-site dermatologist, who diagnosed dermatitis, noted no active lesions or wounds but wrote "possible scabies and delusions of parasitosis." *Id.* ¶ 36. Following this appointment, Montoya's mattress, clothing, pillow, and linens, were replaced, and hydrocortizone cream prescribed, in what NP Holbrook describes as "[o]ut of an abundance of caution," though she observed no symptoms consistent with scabies, as the risks of treatment were minimal and might "ease Montoya's mind." *Id.* However, Montoya continued to complain to the medical department of facial lesions and/or scabies at visits over the next several months. *Id.* ¶¶ 37-39. At these visits, NP Holbrook offered various treatments for his symptoms, including topical creams for itching, Bactracin, and baby shampoo for his face, though she never observed any symptoms of scabies. *Id.* NP Holbrook writes:

> In my medical judgment (and in the judgment of multiple other providers who have seen and evaluated Montoya), he has never actually been diagnosed with scabies. Preventive and precautionary treatments for scabies were ordered for him in an attempt to ease his concerns. He has been provided creams and medication for the skin lesions that have been present on his skin, which appear to be the result of self-inflicted "skin picking" or excessive scratching.

*Id.* ¶ 40.

Dr. McDuffie, a Psychiatrist providing contract services at Red Onion, has provided an affidavit detailing Montoya's mental health treatment, including his complaints and medications. Montoya alleges that Dr. McDuffie "lowered [his] medications" after the April 3, 2023 incident,

11

where he was treated for scabies and his property and linens were thrown away. On April 7, 2023, Montoya asked for an increase in his Cymbalta medication, which Dr. McDuffie denied, though he did increase two of his other medications. McDuffie Aff. ¶ 67, Dkt. 30-2. Dr. McDuffie's affidavit acknowledges several occasions where he lowered Montoya's medications, however, this was a response to Montoya hoarding his medication, indicating that Montoya was not taking the medications as advised. Dr. McDuffie explained that because he had prescribed Montoya several supratherapeutic doses of medication, which made hoarding even more dangerous, in his "medical judgment, the safest course of actions was to reduce Montoya's medications to within standard dosing limits and temporarily cease the supratherapeutic doses." *Id.* ¶ 33. Dr. McDuffie's affidavit also reveals that he increased Montoya's medications on several occasions, when he had not had recent safety issues. Dr. McDuffie states that, in the event that Montoya's skin picking or belief that he has scabies is related to a mental health issue, then an anti-psychotic medication would be the best course of treatment; however, Montoya is already taking an anti-psychotic medication (Seroquel).

### B. Law and Analysis

### (1) Eighth Amendment Claim

The Eighth Amendment prohibits cruel and unusual punishment, and protects prisoners from the "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 1051 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Generally, a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment.

12

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Viewing the record here, and drawing all reasonable inferences in Montoya's favor, the medical defendants are entitled to summary judgment, as they were not deliberately indifferent to Montoya's serious medical needs. Montoya argues that the medical defendants have "completely ignored" his dermatological condition, writing that "at this point in time its impossible to tell exactly what the diagnosis would be or what type of treatment an expert might prescribe" and asks again to be seen by a dermatologist. Dkt. 52 at 4. However, there is no evidence of untreated scabies; Montoya's allegations of skin lesions and seeing burrowing and flying bugs are allegations of dermatological distress, not necessarily symptoms of scabies. More importantly, these symptoms, were not ignored, but instead were diligently treated, via multiple treatment modalities. The record shows that Montoya received ongoing medical treatment for his skin complaints, as well as his mental health treatment. The medical defendants responded to his requests for medical care, examined him multiple times and provided varying treatments for his symptoms, including promethazine and hydrocortizone cream, advising him to stop picking at his sores, and arranging for him to be seen by an off-site dermatologist. Despite never being diagnosed with scabies,[5] the medical defendants provided Montoya with (low-risk) treatment for

---

[5] Defendants indicate that the dermatologist wrote on her consultation form "possible scabies and delusions of parasitosis." This is not a definitive scabies diagnosis, but even if it were a "disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim." *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021). Moreover, defendants treated Montoya for scabies following this appointment, in any event.

13

scabies twice, including medication and disposing of all his clothing and linens, all in an attempt to ease his mind. Montoya's dissatisfaction, including his requests to see another dermatologist and/or obtain a diagnosis of scabies, amounts to a disagreement with medical personnel over the course of his treatment, which does not create an Eighth Amendment Claim. *Wright v. Collins,* 766 F.2d at 849; *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) ("[W]e have specifically held that a mere difference of opinion regarding the adequate course of treatment does not give rise to an Eighth Amendment violation.").

Likewise, Montoya's complaint that Dr. McDuffie lowered his mental health medication at some point after April 3, 2023, does not state a claim. Dr. McDuffie explained how he exercised his medical judgment when changing Montoya's mental health medications, including because of Montoya's own actions in hoarding those medications. While McDuffie made adjustments to Montoya's mental health medications, the record shows these adjustments were an attempt to best control Montoya's mental health symptoms, while controlling the risk of abusing medication. *See Simmons v. Moreno*, No. 1:20CV520 (TSE/JFA), 2021 WL 2930072, at *7 (E.D. Va. July 12, 2021), *aff'd*, No. 21-7170, 2021 WL 6067239 (4th Cir. Dec. 20, 2021) (noting that "Courts have generally found Eighth Amendment claims based upon a doctor's determination of a dosage level or the type of medication prescribed do not constitute deliberate in difference" and collecting cases).

### (2) Supervisory Liability and State Law Claims

Because I find that the underlying conduct did not violate Montoya's constitutional

rights, his claims for supervisory liability also are without merit.[6] *See Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 724 (4th Cir. 1991); *Doe v. Rosa*, 664 F. App'x 301, 304 (4th Cir. 2016) ("There can be no supervisory liability when there is no underlying violation of the Constitution."). Regarding his state law claims against these defendants for gross negligence and intentional infliction of emotional distress, I likewise find that Montoya has failed to state a claim. Gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). It "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* As discussed above, Montoya received treatment for his medical and skin complaints, including treatment for scabies, as well as mental health medication, which shows that the medical defendants were not indifferent to Montoya, and his safety was not "completely neglected." Accordingly, I find that "reasonable minds could not differ upon the conclusion that [gross] negligence has not been established." *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987).

To state a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting

---

[6] To the extent that Montoya attempts to allege a claim for bystander liability, this claim is likewise without merit, because there has not been a violation of the Constitution. An officer may be liable under the theory of bystander liability if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002); *see also Thomas v. Holly*, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that "any bystander liability in this case must be based upon being a bystander to the unconstitutional conduct of [fellow officers]").

Case 7:24-cv-00544-RSB-PMS    Document 64    Filed 09/11/25    Page 16 of 16
Pageid#: 1979

emotional distress; and (4) the resulting emotional distress was severe. *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008) (noting that the tort of intentional infliction of emotional distress is "not favored" and must be shown by clear and convincing evidence). Montoya's allegations of emotional distress are conclusory and do not adequately allege severe emotional distress. *See Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991) (finding emotional distress is sufficiently severe only when "no reasonable person could be expected to endure it"). Montoya's allegations of "substantial emotional distress" and experiencing mood swings, irritability, lapses in concentration, loss of sleep, and fear, are not enough. *See* Compl. at 9. Likewise, as discussed, the medical defendants provided Montoya with treatment for his medical complaints, and Montoya's allegation that they did not provide him with a scabies diagnosis or the type of medical treatment he preferred does not rise to the level of outrageous or intolerable behavior. Accordingly, Montoya fails to state a claim for intentional infliction of emotional distress.

### IV.     Conclusion

For the reasons explained, the non-medical defendants' Motion for Summary Judgment is **DENIED** and the medical defendants' Motion for Summary Judgment is **GRANTED**.

The Clerk is directed to set this case for trial. The trial date shall allow sufficient time for the plaintiff and remaining defendants to conduct discovery and file any dispositive motions.

Entered:  September 10, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

16